## FAKES & CO. v. FORT WORTH GAS CO.
### (No. 11348.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 9, 1926.)

**I. Gas ⟜17—Due care required to prevent leakage of gas causing explosion.**

Gas company owed at least due care to inspect and repair gas lines to meter in back end of building so as to prevent leakage and danger of explosion.

**2. Gas ⟜20(4)—Negligence in permitting leakage of gas exploding held for jury.**

In action for breakage of windows by explosion of escaped gas in neighboring basement, negligence of gas company *held* question for jury.

**3. Gas ⟜20(2)—Trial ⟜127.**

Testimony for defendant, in action for injuries from gas explosion, suggesting that defendant or an insurance company had paid, *held* erroneously admitted as not within pleadings.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Suit by Fakes & Co. against the Fort Worth Gas Company in justice court. From a judgment for defendant on trial de novo after appeal, plaintiff appeals. Reversed and remanded.

Alfred H. Eaton, of Fort Worth, for appellant.

Slay, Simon & Smith and Charles B. Stewart, all of Fort Worth, for appellee.

CONNER, C. J. Fakes & Co. instituted this suit against the Fort Worth Gas Company in a justice court to recover damages in the sum of $159.27, the alleged value of three plate glass windows destroyed by an explosion in the basement of an adjoining business concern. A trial was had in the justice court and judgment rendered, from which judgment an appeal was prosecuted to the county court of Tarrant county for civil cases, where there was a trial de novo. After the introduction of the evidence in the county court, the trial judge gave a peremptory instruction to the jury to find for the defendant, and the plaintiff, Fakes & Co., has duly appealed from the judgment following the verdict, and assigns error to the court's action.

Upon allegations of negligence which authorized the introduction of the evidence, the plaintiff proved the location of its business house and its proximity to the business house of Turner & Dingee adjoining; also the situation and value of the plate glass windows and their destruction by an explosion that took place in the basement room of Turner & Dingee. Plaintiff then offered as a witness John Scheman, who testified that he was working for Turner & Dingee about April 27, 1922, the approximate date of the explosion; that he was in the building on that date and part of the evening before the explosion, and noticed, as he had before noticed, an odor something like natural gas; that he knew the odor of natural gas when he smelled it; that the odor mentioned had been in the basement quite a while; that he left the basement about 10 minutes before it blew up; that he smelled the odor there at that time; that the explosion blew up the floor, broke a 12-inch post in two and hurt a few people; that about a month before the explosion occurred his (the witness) father was in the basement when there was an explosion which blew his father about 12 feet; that after the explosion last mentioned the gas mains in the street were inspected, and he supposed repaired; that the street was "dug up." On cross-examination, he said that the gas line from the street ran into the basement, the meter being at the west end; that after the explosion the meter was moved to the front or east end; that the explosion occurred near the center of the house, about 25 feet from the front or east end of the building; that since the explosion he had not been able to smell the particular odor in the basement.

W. H. Heron, witness for the plaintiff, testified that he was employed by Turner & Dingee, and was so employed on the 27th day of April, 1922, and prior to that time; that prior to the explosion he noticed peculiar odors, but did not pay much attention to them, just thought they were odors from the basement; that after the explosion some work was done in the street in front of the building; that the gas lines were dug up, at which time he smelled odors something like the same odors they had prior to the big explosion.

Fred W. Scheman, in behalf of the plaintiff, testified that he was working for Turner & Dingee in April, 1922; that he had occasion every day to go into the basement of the store; that about 6 or 8 weeks prior to the explosion in controversy he was down in the basement with a candle, and an explosion took place which blew him some 12 or 18 feet; that Turner & Dingee's store faces east on Houston street, and the explosion that he mentioned was in the southeast corner; that he saw fire in the corner, and it was burning up toward the floor; that it looked like it was "flickering along the wall, on the front wall, the east wall of the basement"; that he extinguished the fire with chemicals; that he saw a "little flicker at the side of the pipe that comes in the middle of the wall where the gas pipe comes through the front wall"; that a few days after this happened the gas pipe in front of the building was dug up; that he smelled the gas out there; that without doubt it was natural gas; that they were taking down the joints of the pipe line and repacking them; that they dug up the street

all along the block from Fourth to Fifth street, after which they covered it back again; that he smelled odors of natural gas afterwards about the same as before; that between the time of the small explosion and the big explosion he saw some fire burning in the street; that at one time the fire was burning in front of the store on a line between Turner & Dingee and Fakes & Co. near the curb; that the fire looked like gas burning; that after the big explosion he knew some repairs were made in the street; that they started digging in the street and dug from about First street to Seventh or Eighth street; that before the explosion the gas meter was in the back of the end basement; that after the first explosion he talked to Mr. Dingee and told him he would have to get a plumber see what was wrong; that a plumber came but did not fix it, he told Mr. Dingee he must see the gas company; that the gas was "leaking in"; that the gas lines running into the basement went into the cement sidewalk.

There was other testimony to the effect that the repair of the gas lines had been made by the defendant gas company, and that the meters as now operated were established at the curb line, but there was no denial of the fact that at the time of, and prior to, the explosion in controversy the meter in the basement of the Turner & Dingee store was in the back end of the building, placed there presumably by the predecessors in title of gas company.

[1, 2] We think there can be no doubt but that the evidence given tended to show that the explosion and resultant damage was caused by an explosion of gas that had leaked from the gas lines of the gas company in the street or from the line in the basement of the Turner & Dingee building, and that company certainly owed the duty of at least exercising due care to inspect and keep its gas lines through which it furnished gas to the meter in the back end of the building in such repair as to prevent leakage and danger of explosion. We therefore conclude that the plaintiff was entitled to go to the jury on the issues of negligence presented in its pleadings, and that the court erred in giving the peremptory instruction. See Caddo Gas Co. v. Jeffries (Tex. Civ. App.) 271 S. W. 108.

[3] In view of another trial, we will also notice appellant's objection to the following questions, propounded to and answered by George T. Morris, a witness called in behalf of the defendant:

"Have Fakes & Co. been paid in full for this glass breakage? Ans.: It is my understanding that they were. I did not see the check or didn't write the check. It is my understanding that it has been paid.

"Don't you know who paid for it (the broken glass)? Ans.: I do not. I was under the impression that the insurance company paid for it. I don't know whether they did or not."

We think the testimony was immaterial and irrelevant, as urged by the plaintiff. If defendant had a plea of payment for the damage done, the record fails to disclose it, and there is no pretense that the defendant company in fact paid the damage, and the suggestion that it may have been paid by the insurance company was wholly irrelevant and prejudicial. See T. & P. Ry. Co. v. Levi, 59 Tex. 674; Texas Central Ry. Co. v. Cameron (Tex. Civ. App.) 149 S. W. 709; Nussbaum & Scharff v. Brazos Valley Ry. Co. (Tex. Civ. App.) 149 S. W. 1083; 1 Sutherland on Damages, p. 488; 28 Corpus Juris, 591 et seq.

We conclude that the judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

DUNKLIN, J., not sitting.