**Glen Alan SMALL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 43617.**

Court of Criminal Appeals of Texas.

April 7, 1971.

Rehearing Denied May 19, 1971.

T. M. Reid, Abilene, for appellant.

Ed Paynter, Dist. Atty., and Britt Thurman, Asst. Dist. Atty., Abilene, and Jim D. Vollers, State's Atty., Austin, for the State.

### OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for assault with intent to commit rape with the punishment being assessed at five years by the court following a verdict of guilty.

In his first ground of error appellant urges without citation of authority that the indictment is fatally defective since it did not allege that he had the "specific" intent to commit rape. The indictment in part alleged that the appellant "did then and there unlawfully in and upon R———— A————, a woman, make an assault, with the intent then and there to commit the offense of rape upon the said R———— A———— * * *." We find no merit in appellant's contention.

We do observe that the careful trial judge required the jury in his charge to find beyond a reasonable doubt that appellant had made an assault "with the specific intent then and there to have carnal knowl-

edge of the said R—— A—— by force and without her consent and against her will * * *" before they could convict him of the charge in the indictment.

Ground of error #1 is overruled.

Next appellant contends the court should have submitted only the charge of aggravated assault for the evidence was insufficient to submit assault with intent to commit rape.

The prosecutrix testified that in the city of Abilene at approximately 10 p. m. on August 7, 1969, she was driving home after visiting a friend when she noticed someone following her in a Rambler automobile, flashing the headlights of such vehicle. She related that the Rambler then curbed her Mustang automobile making it necessary for her to stop. She identified the appellant as the Negro man who got out of the Rambler wearing fatigue pants and who "didn't have a shirt on or anything" and came to her car where she "could tell by the smell he had been drinking." After asking where she was going and if she was married, the appellant told the prosecutrix to get out of her car. When she refused he slapped her and then hit her with his closed fist. She left the automobile only after the appellant placed a knife to her throat and took her by the arm. He then threw her onto the front seat of his car and got in on top of the prosecutrix, placing his body between her legs and putting the weight of his body on her and causing her blouse to come open in the back.

She later testified the appellant "crawled up between" her legs, and she "was in an awkward position because one leg was on the seat and one was in the floorboard and he was on top of me." She related she "was scared that he was going to rape me" and she did not scream or holler while being transported between the cars because he had hit her twice and she "didn't think he would much think about using the knife if" she "started to scream or run or something."

Seeing the headlights of an approaching vehicle the prosecutrix related she told the appellant she would go with him, but "that he had better go back and turn the headlights off on my car which I had left burning." When he departed on such errand the prosecutrix ran screaming towards the oncoming automobile. The appellant then left the scene in his car.

Two airmen corroborated prosecutrix's testimony as to her screaming approach to their vehicle; that she was shaking and nervous and that a Negro man drove off in a car which had been parked at an angle blocking a Mustang automobile.

At the time of appellant's arrest the next morning an open knife was found in his car.

In his testimony appellant denied the offense or remembering any such incident. He related that before he left the Air Force Base where he was stationed that night he had been drinking beer, bourbon, gin, wine, rum and had taken three "redbird" or seconal pills.

Appellant urges that since the State's evidence does not reflect a statement that he intended to rape the prosecutrix, or show a removal of her clothes or his, or a fondling of her sexual parts his contention should be sustained.

In Shelton v. State, 150 Tex.Cr.R. 368, 200 S.W.2d 1004, 1005, this court said:

"The question of whether he intended to have sexual intercourse with her at any and all events notwithstanding she resisted, and whether or not he voluntarily desisted or was induced to do so by seeing the lights of an approaching automobile were issues of fact for the determination of the jury under appropriate instructions from the court, and this court would not be authorized to disturb the conclusions of the jury on the issue of fact. See Washington v. State, 51 Tex. Cr.R. 542, 103 S.W. 879." See also Clay v. State, 157 Tex.Cr.R. 32, 246 S.W.2d 180.

In the case at bar the court charged on aggravated assault as well as assault with intent to rape. In our opinion, under the evidence presented, the court was justified in doing so.

We find no error in the court's action in refusing to grant a motion for instructed verdict as to assault with intent to rape.

Ground of error #2 is overruled.

Still further, appellant contends the court erred in failing to submit the case to the jury on the issues of threats and fraud as charged in the indictment, despite his timely presented objection.

"An assault with intent to commit rape only be shown by proof of force or attempted force sufficient to manifest a determination to have intercourse at all hazards. And the female must have resisted to the utmost the effort on the part of the accused to accomplish his purpose.

"An assault with inent to commit rape cannot be committed by means of threats or fraud, for in such cases there is an absence of force. * * *" 48 Tex. Jur.2d, Rape, Sec. 12, p. 644.

While the indictment alleged "force, threats and fraud," the trial judge wisely considered the "threats and fraud" allegation as surplusage and submitted the case to the jury on "force" alone.

Ground of error #3 is overruled.

In his last ground of error appellant claims the court erred in admitting, over objection, a purported written confession as it was not shown he was properly warned in accordance with Article 38.22, Vernon's Ann.C.C.P., and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

As we view the evidence, there was a compliance with the requirements of these authorities. Be that as it may, we observe that the confession was not offered during the State's case in chief but was used only for impeachment purposes after the appel-lant had denied telling anyone he had been at the scene of the alleged offense. Only recently in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, the United States Supreme Court held that a confession which did not meet the Miranda requirements and was thus unavailable for use during the presentation of the State's case in chief could nevertheless be used for impeachment of the defendant testifying in his own behalf. Appellant makes no claim that the confession was coerced.

Ground of error #4 is overruled.

The judgment is affirmed.